

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

BB:RTP
F.#2010R01754

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 6, 2012

<u>By Hand Delivery and ECF</u>

The Honorable Carol B. Amon
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  <u>United States v. Peng Wang</u>
            <u>Criminal Docket No. 10-772 (CBA)</u>

Dear Chief Judge Amon:

      On February 18, 2011, defendant Peng Wang pled guilty before Your Honor, pursuant to a plea agreement, to Count Three of the above-captioned indictment. Count Three charges the defendant with conspiracy to take a hostage in violation of Title 18, United States Code, Section 1203. The government hereby submits this response to the defendant's letter, dated December 27, 2011, ("Ltr.") seeking "the most lenient sentence possible" based on his acceptance of responsibility, subordinate role in the kidnaping conspiracy, efforts to assist the government, and personal history and characteristics.

      In addition to the defendant's December 27, 2011 letter, the government is in receipt of the Pre-Sentence Investigation Report ("PSR") dated June 9, 2011. For the reasons set forth herein, the government submits that a non-Guidelines sentence may be reasonable in this case in light of all of the factors under 18 U.S.C. § 3553(a).

I.   <u>The Offense Conduct</u>

      On September 10, 2010, Wang was arrested in Brooklyn, New York by Federal Bureau of Investigation ("FBI") agents who were investigating the abduction of a Chinese national, Gongjie Geng, also known as "George," (also referred to herein as "the victim") who was being held for a $3.5 million ransom. Wang was arrested with co-defendant Wenhai Liu, shortly after being dropped off by co-defendant Shi Xin Li at a subway stop in

Brooklyn. At the time of his arrest, Liu was carrying the victim's passport. Li was arrested shortly thereafter and agreed to assist law enforcement, identifying the victim and providing the location where he was being held in Queens, New York. Law enforcement proceeded to that location, where they rescued the victim and arrested co-defendants Yunxin Lin, Jai Wei Xu and Chen Qing Zhang. Lin was posing as another kidnaping victim, and Xu and Zhang had been acting as guards.

As Your Honor determined at their sentencing proceedings, co-defendants Lin and Shi Xin Li were the "leaders" or "organizers" of the kidnaping scheme. Both Lin and Li knew the victim socially and had learned that the victim came from a wealthy family in China.[1] Li recruited defendant Wang, who in turn recruited Xu, Zhang and Liu. As noted in the PSR, the plan to kidnap the victim solidified around the belief that the victim's father would be traveling to the United States in September 2010, which would enable easy payment of the ransom money. PSR ¶ 5. In addition to recruiting the other participants, Lin and Li undertook significant planning in preparation for the kidnaping. Among other things, they rented an apartment in which to hold the victim on Maple Street in Queens ("Maple Street Apartment"), purchased a Taser gun to subdue him and SIM cards to make calls to China, and held meetings to discuss their plans with Wang, Liu, Xu and Zhang at a bar and at the Maple Street Apartment. In addition, Lin, Liu, Wang, Xu and Zhang followed the victim and set up watch outside the victim's girlfriend's apartment in the days prior to the abduction.

The abduction took place on September 7, 2010, when Lin convinced the victim to meet him for breakfast in Queens to discuss repaying a loan the victim owed Lin. PSR ¶ 6. After breakfast, Lin and the victim walked to an empty nearby bar to which Liu had keys. Wang, Liu, Xu and Zhang were waiting there. When Lin and the victim entered a back room of the bar, the victim was attacked by Zhang and Xu, while Liu pretended to attack Lin to make it appear as if he was a victim as well. During the attack, Zhang hit and punched the victim in the face and body, and Xu used the Taser on him multiple times. The victim pretended to pass out after the first time he was Tasered, hoping he would be robbed and left, but he was then Tasered again, which caused him to scream in pain. PSR ¶ 7. The victim

---

[1] Both Li and Lin made post-arrest statements in which they each identified the other as the person who had initially raised the idea of kidnaping the victim.

3

was then blindfolded, bound and transported to the Maple Street Apartment, where Li was waiting as a look out.  PSR ¶ 8.

Over the next four days, the defendants made ransom calls to the victim's family demanding $3.5 million dollars for his safe return.  The calls were made on cellular phones from Li's BMW using prepurchased SIM cards in an attempt to avoid potential law enforcement efforts to trace the calls to either their physical location or cellular phones.  Li made the first call to the defendant's father, who thought the call was a prank.  Lin, Wang and Liu made subsequent calls to the defendant's mother, always in the presence of Li, who was driving the others in his BMW.  On one occasion, a three-way call was set up in which Lin called the defendant's family in China on one phone and Li called the other defendants who were with the victim at the Maple Street Apartment on another phone, and the two phones were held together so that the victim and his mother could communicate.  During this call, the victim was forced to speak with his mother and beg for his life while an apple corer (which the victim believed was a knife because he was blindfolded) was held to his neck.  PSR ¶¶ 8-9.

During the calls the defendants[2] made statements to the victim's mother such as, "Please don't try to play tricks with me. I want $3.5 million dollars.... If your son's life is as worthless as mine, then it's up to you.  But I think you should think about it yourself."  In a subsequent call, one of the defendants demanded that the victim's mother bring the $3.5 million to New York herself within 24 hours.  When she asked for more time, one of the defendants said, "No.  Otherwise, you come to pick up the dead body! Ok? Your son!"  In another call the victim's mother asked again for more time to get her passport in order and to travel to the United States and asked the defendants not to harm her son.  In response, one of them said, "If you are cooperated [sic] then I will take care of your son.  If you are not cooperated [sic], then I will abuse him to death little by little."  In another call the victim's mother explained that she was having trouble collecting the full $3.5 million.  One of the defendants responded, "Let's do it this way.  I am not going to feed your son.  He is in a warehouse all alone.  From now on, I will give him food only when you send me the money.  Okay? ... If you don't want him to starve to death, you should get the money as soon as possible."

---

[2]   The government has been unable to determine which defendant is speaking on each of the recorded calls.

Notwithstanding the above-noted ransom calls, the government's investigation suggests that the defendants never intended to use deadly force against the victim. Nevertheless, they did beat him, kept him blindfolded and detained, and frightened him. Moreover, their threats were taken seriously by the victim's family. The family was preparing to send the ransom money at the time the victim was rescued.

Upon his arrest, Wang admitted to his involvement in the kidnaping scheme. Wang explained that Li charged him with recruiting other individuals and that he complied by recruiting defendants Liu, Xu and Chang.

II. The Legal Standard

In the Supreme Court's opinion in United States v. Booker, 543 U.S. 220, 245 (2005), which held that the Sentencing Guidelines are advisory rather than mandatory, the Court made clear that district courts are "require[d] . . . to consider Guidelines ranges" in determining sentences, but may tailor sentences in light of other statutory concerns. See 18 U.S.C. § 3553(a). In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court elucidated the proper procedure for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 552 U.S. at 49-50 (citation omitted). Next, a sentencing judge should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. (citation and footnote omitted).

III. Sentencing Arguments

    A. Objections to the PSR

        1. Two-Level Enhancement for "Serious Bodily Injury" Pursuant to U.S.S.G. § 2A4.1(b)(2)(B) Should Not Apply

Four of Wang's co-defendants have already been sentenced. On July 15, 2011, Your Honor sentenced Li and Lin, the leaders of the kidnaping scheme, to 15 years' imprisonment. That same day, Your Honor sentenced defendant Liu to 90 months' imprisonment. On July 26, 2011, Your Honor sentenced defendant Xu to 56 months' imprisonment.

5

At those proceedings, the government argued and the Court agreed that the two-level enhancement for "serious bodily injury" pursuant to U.S.S.G. § 2A4.1(b)(2)(B) that the Probation Department had included in computing the defendants' offense levels was not warranted under the circumstances of this case. Accordingly, the government submits that the two-level enhancement for "serious bodily injury" should not similarly apply to defendant Wang.

2. <u>Offense Level Computation</u>

In light of the foregoing, the government submits that the defendant's total offense level should be a level 37, not a level 39 as reflected in the PSR. PSR ¶ 39. The parties agree that the defendant falls within Criminal History Category I. Accordingly, his applicable Guidelines Range is 210-262 months' imprisonment.

B. <u>The Defendant's Motion for a Lenient Sentence</u>

In his letter dated December 27, 2011, the defendant urges Your Honor to impose the most lenient sentence possible based on his timely acceptance of responsibility, his efforts to assist the government, his subordinate role in the conspiracy to which he pled guilty, and to his personal history and characteristics.

The government does not dispute that the defendant admitted to his role in the kidnaping at the time of his arrest, that he timely notified the government of his intention to plead guilty and that he played a subordinate role in the conspiracy. Nor does the government dispute that the defendant, who pled guilty without the benefit or promise of a cooperation agreement, met with the government several times and provided what the government believes to be truthful and complete information regarding his conduct in this case as well as other criminal activity in which he, some of his co-defendants, and other individuals engaged.

At the same time, the defendant committed an extraordinarily serious crime of violence that involved significant planning and forethought and his conduct commands a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment and affords adequate deterrence. While the defendant's role did not rise to the level of a leader of the scheme, he admits that he recruited defendants Liu, Xu and Chang. In addition, the government rejects the defendant's contention that his conduct was the result of his personal history, <u>i.e.</u>, his upbringing and his

6

difficulty in adjusting to a new life in the United States. The defendant had a choice about whether to participate in this violent crime, and he decided to do so knowingly and intentionally. Nevertheless, in light of the defendant's acceptance of responsibility and his subordinate role in the conspiracy, the government submits that a just and reasonable sentence in this case may be one that falls below the applicable Guidelines range. The government submits, however, that any such variance below the Guidelines range should be modest.

IV. <u>Conclusion</u>

For the above-stated reasons, the government submits that a sentence somewhat below the Guidelines may be reasonable in this case.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:     /s/
Robert T. Polemeni
Assistant United States Attorney
(718) 254-6044

cc: Clerk of Court (CBA) (by ECF)
    Paul A. Goldberger, Esq. (by ECF)
    Shayna Bryant, U.S. Probation (by email)
    Leslie Lockwood, U.S. Probation (by email)